[No. 29042. Department One. October 28, 1943.]

A. S. CORY, *Appellant*, v. F. L. NETHERY *et al.*, *Respondents*.[1]

[1]Reported in 142 P. (2d) 488.

*Hull & Murray* and *J. D. Searle,* for appellant.

*C. D. Cunningham,* for respondents.

GRADY, J.—Joint drainage district No. 7 of Thurston and Lewis counties levied assessments on the lands within its borders to pay the costs of making certain improvements. The owner of the land described in the complaint failed to pay assessments falling due in the years 1924 to 1931, inclusive. Certificates of delinquency were issued. The appellant, A. S. Cory, became the owner of the certificates. The assessment, payable in ten annual installments, was levied in the year 1922.

An action was brought by appellant in 1941 to foreclose the lien evidenced by the certificates of delinquency. By answer to the amended complaint, respondents asserted that the action was barred by the statute of limitations. At the trial, the facts of the case were agreed upon. The court entered a judgment dismissing the action, from which this appeal is taken.

The question to be decided is whether chapter 182 of the Laws of 1907, p. 404 (Rem. & Bal. Code, § 7906), was repealed by § 71, p. 481, of chapter 98, Laws of 1911 (Rem. Rev. Stat., § 9424 [P. C. § 1060]).

In our approach to this question, it is necessary that we review the history of the legislation on the statute of limitations affecting actions for the collection of special assessments for local improvements. Prior to the legislative session of 1895, there were several statutes in force limiting the time within which the actions therein mentioned must be commenced, one of them being what is now § 165 of Rem. Rev. Stat., [P. C. § 8172] as follows: "An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued." The 1895 legislature recognized that there was no law on the subject of limitation of actions to collect special assessments for local improvements, and passed chapter 114, p. 270:

"AN ACT prescribing the time within which actions may be brought by municipal corporations for the collection of special assessment for local improvements.

"*Be it enacted by the Legislature of the State of Washington:*

"Section 1. All actions by municipal corporations to collect any special assessment for local improvement of any kind, against any person, corporation or property whatsoever, or to enforce any lien for any special assessment for local improvement of any kind, shall be commenced within ten years after said assessment shall have become delinquent or due, or within ten years after the last installment of any such special assessment shall have become delinquent or due, when said special assessment is payable in installments.

"Sec. 2. There being no law on the subject herein contained, providing for the limitation of actions herein provided for, an emergency is declared to exist, and this act shall be in force from and after its passage and approval by the governor."

Section 1 became § 1150 of Ballinger's code. Prior to its passage, this court had held that the two-year statute referred to above applied to actions to foreclose liens created by special assessments. See *Mathews v. Wagner,* 49 Wash. 54, 94 Pac. 759.

In 1907, the legislature passed chapter 182 of the Laws of

1907, p. 404, which became § 7906 of Remington & Ballinger's code:

"An action to collect any special assessment for local improvements of any kind against any person, corporation or property whatsoever, or to enforce any lien for any special assessment for local improvements of any kind, whether said action be brought by a municipal corporation or by the holder of any delinquency certificate, or by any other person having the right to bring such an action, shall be commenced within ten years after such assessment shall have become delinquent, or due, or within ten years after the last installment of any such special assessment shall have become delinquent or due when said special assessment is payable in installments."

The act of 1895 was not expressly repealed by chapter 182 of the Laws of 1907. It will be noticed that the act of 1907 brought within its terms, in addition to municipal corporations, those holding or having the right to bring an action to enforce a lien for special assessments.

By the year 1911, there had been enacted a considerable amount of legislation relating to local improvements in cities and towns, much of which lacked harmony and caused confusion. To remedy this, chapter 98 of the Laws of 1911, p. 441 (Rem. Rev. Stat., § 9352 [P. C. § 989]), was passed, the title of which is "AN ACT relating to local improvements in *cities and towns,* and repealing certain acts and parts of acts." (Italics ours.)

Two sections of chapter 98 of the Laws of 1911 are material here, § 41, p. 468 (Rem. Rev. Stat., § 9394 [P. C. § 1029]), and § 71, p. 481 (Rem. Rev. Stat., § 9424 [P. C. § 1060]). Section 41 is substantially the same as chapter 182 of the Laws of 1907. Section 71 is a repealing section and contains a schedule of acts and parts of acts repealed, specifically setting them forth both by reference to session laws and to sections of the codes and statutes. In this schedule appear: "Laws of Washington, 1895, chapters 114 . . . Laws of Washington, 1907, chapters . . . 182 . . . Remington and Ballinger's Annotated Codes and Statutes . . . Sections . . . 7906 . . ."

■ It will thus be seen that, by its terms, chapter 98 of the Laws of 1911 repealed chapter 182 of the Laws of 1907, which had fixed a ten-year limitation on actions to enforce collection of special assessment liens levied by any kind of a taxing or assessment district, and substituted therefor § 41 of chapter 98. This section cannot avail the appellant, because the title to chapter 98 of the Laws of 1911 limits the operation of § 41 to *cities and towns,* while the lien appellant seeks to enforce is for special assessments levied by a drainage district, an essentially different kind of entity. The same reasoning, however, must apply to the repealing section, for, if it, too, is limited by the title to the act of which it is a part, it does not repeal chapter 182 of the Laws of 1907 beyond the subject of local improvement assessments levied by cities and towns.

■■ Section 19 of Art. II of the constitution of the state of Washington provides that "No bill shall embrace more than one subject, and that shall be expressed in the title." In construing this constitutional provision, we have many times held that the title of a statute need not be a complete index of its provisions, but it is sufficient if it so indicates its substance and scope as reasonably to lead to an inquiry into its content.

In *DeCano v. State,* 7 Wn. (2d) 613, 110 P. (2d) 627 (a case heard *En Banc*), many of our cases were reviewed, and we said, p. 627:

"In this connection, it should be noted that, in applying the general rules in question, this court has observed a well-marked line of distinction between broad, general titles on the one hand and narrow, restricted titles on the other. The legislature may, if it chooses, adopt a very broad and comprehensive title in a bill, in which case great liberality will be indulged to hold that any subject reasonably germane to such title may be embraced within the body of the bill. If, however, the legislature sees fit to use a restricted title, in which the language is of specific, rather than generic, import, the title will not be regarded so liberally, and provisions of the bill not fairly embraced therein cannot be given force. This rule was concisely expressed in *Hacker v.*

*Barnes,* 166 Wash. 558, 7 P. (2d) 607, 80 A. L. R. 1212, in the following language:

" 'In its decisions, this court has tended to uphold general titles to statutes, while closely scrutinizing specific or restricted titles. *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837; *National Assn. of Creditors v. Brown,* 147 Wash. 1, 264 Pac. 1005; *National Assn. of Creditors v. Pendleton,* 158 Wash. 137, 290 Pac. 987; *In re Hulet,* 159 Wash. 98, 292 Pac. 430.' "

In the enactment of chapter 98 of the Laws of 1911, the legislature saw fit to use a restricted title, and it will be seen therefrom that legislation with reference to drainage districts is not at all germane. If we should accept § 71 of chapter 98 of the Laws of 1911 as a repeal in its entirety of chapter 182 of the Laws of 1907, then it would be unconstitutional as to liens for assessments levied by drainage districts, for it would offend § 19 of Art. II of the constitution.

We believe that, by the application of established rules of construction, it can be said that the 1911 legislature did not intend to repeal chapter 182 of the Laws of 1907 in so far as it applies to taxing entities other than cities and towns, even though the language of the repealing section, when read literally, includes such repeal. We think that the legislature, when legislating on the subject of local improvement assessments by cities and towns and providing a ten-year limitation for actions to enforce liens, could not have intended, in view of the acts of 1895 and 1907, to differentiate between assessment liens upon property in a city or town and those upon property located in a drainage or other similar district, provide a ten-year limitation for the former, and relegate the latter to the situation existing prior to the 1907 act, and thus recreate the evil which it corrected by that act. A repealing clause or section in an act is subject to the same rules of interpretation as any other clause or section therein. Express words of repeal must not be taken literally if, by so doing, the enactment is carried beyond the scope of its title and thereby other legislation is broken down or destroyed.

The situation here is substantially the same as that with

which this court was confronted in *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522. In that case, it appears that, by an act passed in 1895, the office of commissioner of arid lands was created. By one of the sections of an act passed in 1897, the act of 1895 was expressly repealed. It was contended that the title of the later act was not sufficient to warrant the inclusion therein of any matter covered by the 1895 act. We said, p. 629:

"While it is a primary and general rule in the construction of statutes that effect should be given to words which are plain, unambiguous and well understood, according to their natural and ordinary sense and meaning, yet it is well settled that where the literal interpretation of a particular word or phrase is repugnant to the intent of the legislature plainly manifested by the act taken as a whole, such interpretation ought not to prevail. The only object of construction is to ascertain the meaning and intention of the legislature, and when that intention is discovered it is controlling, although it may be contrary to the strict letter of the statute."

After quoting what was said by a New York court, we further said, p. 632:

"Applying the principles so clearly enunciated in the foregoing quotation, we are irresistibly forced to the conclusion that it was not the real intention of the legislation to repeal the act of March 22, 1895, notwithstanding the words of absolute repeal employed by the legislature. It will manifestly appear from an examination of this so-called repealing act, and from the history of its passage, that the legislature at the time of its final enactment did not have in mind either the office of arid land commissioner or the subject of arid lands."

The doctrine of this case has not in any way been modified. It is based upon sound and logical reasoning, and it is applicable to this case. We, therefore, hold that chapter 182 of the Laws of 1907, providing for a limitation period of ten years in cases like the one before us, was not repealed by chapter 98 of the Laws of 1911.

In view of what we have said in this opinion, we find it unnecessary to discuss the question as to whether a drain-

age district is a "municipal corporation" as that term is generally understood. Even though it might be claimed that the drainage district was a municipal corporation, it would not be covered by chapter 98 of the Laws of 1911, because, as we have seen, that act is limited to cities and towns, and the legislature did not act with reference to municipal corporations generally.

The answer of the respondents tendered an issue to the effect that the assessments evidenced by the certificates of delinquency referred to in the complaint were canceled and set aside by a refunding of the bonds issued by the drainage district. The question does not appear to have been passed upon by the trial court, and our examination of the record leads us to the conclusion that it is not in such shape as to enable us to consider and decide the issue presented. The same may be said of the claim of laches made by respondents.

The judgment is reversed, and the case is remanded for further proceedings.

SIMPSON, C. J., STEINERT, JEFFERS, and ROBINSON, JJ., concur.